# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00724-CV

**ACP Insurance Intermediate, LLC; ACP Insurance Holdings, Inc.; ACP Insurance Holdings, LP; Embark Insurance, LLC; Embark Holdco Management, LLC; Embark Insurance Intermediate, LLC; Embark Corporate Services, LLC; Embark General Insurance Adjusters, LLC; Embark General Insurance Agency, LLC; ACP Insurance Finance, Inc.; ACPI (Assignment for the Benefit of Creditors), LLC; ACPAHM (Assignment for the Benefit of Creditors), LLC; AGIA (Assignment for the Benefit of Creditors), LLC; ACS (Assignment for the Benefit of Creditors), LLC; AGIAC (Assignment for the Benefit of Creditors), LLC; APF (Assingment for the Benefit of Creditors), LLC; Access General Agency of Arizona, LLC; and Access General Agency of Pennsylvania, LLC, Appellants**

**v.**

**Cantilo & Bennett, LLP,
Special Deputy Receiver of Access Insurance Company Inc., Appellee**

---

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-000869, THE HONORABLE TIM SULAK, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal from an order denying special appearances filed by non-resident defendants ACP Insurance Intermediate, LLC; ACP Insurance Holdings, Inc.; ACP Insurance Holdings, LP (collectively, "the ACP Respondents"); non-resident defendants Access General Agency of Arizona, LLC, and Access General Agency of Pennsylvania, LLC (collectively, "the Surviving Access Holdco Entities"); Embark Holdco Management, LLC ("Embark Holdco"); Embark Corporate Services, LLC ("Embark Services"); Embark Insurance, LLC ("Embark Insurance"); Embark Insurance Intermediate, LLC ("Embark Insurance

Intermediate"); Embark General Insurance Adjusters, LLC ("Embark Adjusters"); Embark General Insurance Agency, LLC ("Embark Agency"); and ACP Insurance Finance, Inc. ("ACP Finance") (collectively, "the Embark Respondents"); and non-resident defendants ACPI (Assignment for the Benefit of Creditors), LLC; ACPAHM (Assignment for the Benefit of Creditors), LLC; AGIA (Assignment for the Benefit of Creditors), LLC; ACS (Assignment for the Benefit of Creditors), LLC; AGIAC (Assignment for the Benefit of Creditors), LLC; and APF (Assignment for the Benefit of Creditors), LLC (collectively, "the ABC Respondents"). *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(7) (authorizing appeal from interlocutory order that "grants or denies the special appearance of a defendant under Rule 120a, Texas Rules of Civil Procedure"). In three issues, the appellants contend that the trial court erred in denying each of their special appearances. We will reverse the trial court's order denying the special appearances and render judgment dismissing the claims against the appellants for lack of personal jurisdiction.

## BACKGROUND

In March 2018, the Texas Department of Insurance (the Department) sued Access Insurance Company (Access) in Travis County District Court seeking an order designating the Department's Commissioner as the liquidator of Access pursuant to the Texas Insurance Code. *See* Tex. Ins. Code § 443.151 ("An order to liquidate the business of an insurer shall appoint the commissioner and any successor in office as the liquidator and shall direct the liquidator to take possession of the property of the insurer and to administer it subject to this chapter."). The district court signed an agreed order that appointed the Commissioner the liquidator and vested in him title to all of Access's property.

2

Until it was placed into receivership, Access was a Texas-domiciled insurance company regulated by the Department that specialized in private passenger nonstandard automobile liability and physical damage policies. Access's business was conducted through a series of services agreements with Access Holdco Management, LLC (Access Holdco Management), which as of 2015 was an unrelated company, and its subsidiaries.[1] By 2018, Access's business deteriorated, causing Access to be placed into receivership. Having lost their primary revenue stream due to Access's insolvency, Access Holdco Management and a number of its subsidiaries instituted what is referred to as an "assignment for the benefit of creditors" proceeding in Delaware Chancery Court. *See* 10 Del. C. §§ 7301-87 (providing for proceedings for discharge of debt upon insolvency). As part of that process, which was governed by Delaware law, Access Holdco Management and its subsidiaries assigned their assignable assets and property to a group of newly created entities—the ABC Respondents. The ABC Respondents were then responsible for liquidating those assets for the benefit of Access Holdco Management's creditors. *Id.* § 7328 (disposition of proceeds).

In August 2018, the ABC Respondents executed an asset purchase agreement whereby Embark Holdco and Embark Services acquired assets that had previously been assigned to the ABC Respondents. In addition to purchasing assets, which were identified in a schedule to the asset purchase agreement, Embark Holdco and Embark Services assumed one contract, a Transition Services Agreement (the ABC TSA), that ACS (Assignment for the Benefit of Creditors), LLC had entered into with Access Corporate Services, LLC, a subsidiary of Access

---

[1] Until 2015, Access and Access Holdco Management were under common ownership. In 2015, ownership of Access Holdco Management was transferred to a third party. As part of that transaction, Access and Access Holdco Management entered into a contract whereby Access Holdco Management and its subsidiaries operated Access's day-to-day operations pursuant to a series of services agreements.

Holdco Management, in order to facilitate ACS (Assignment for the Benefit of Creditors), LLC's sale and transfer of the assets that Access Holdco Management had assigned to the ABC Respondents.

On February 21, 2019, Cantilo & Bennett, the court-appointed Special Deputy Receiver for Access ("the SDR"), submitted a proof of claim in the Delaware Chancery Court seeking to recover any proceeds that the ABC Respondents might receive in connection with the sale of the assets assigned to them by Access Holdco Management and its subsidiaries. The SDR also objected to the Delaware Chancery Court's exercise of jurisdiction over the assignment for the benefit of creditors proceeding based on its allegation that the proceedings involved property owned by Access, title to which was vested in the SDR. The SDR argued that the Texas Insurance Code vested jurisdiction over any proceeding affecting that property in the Texas receivership proceeding in Travis County District Court. The SDR also filed a separate lawsuit, the proceeding underlying this appeal, in Travis County District Court against the ABC Respondents, the Embark Respondents, the ACP Respondents, and the Surviving Access Holdco Entities alleging causes of action for breach of contract, negligence, and breach of fiduciary duty, and sought relief pursuant to Texas Insurance Code sections 443.202 through 443.207 and chapter 24 of the Texas Business and Commerce Code. *See* Tex. Ins. Code §§ 443.202 (permitting receiver to recover property transferred by insurer to affiliate), .203 (permitting receiver to avoid certain post-petition transfers by insurer), .204 (permitting receiver to avoid certain preferences), .205 (permitting receiver to avoid certain fraudulent transfers), .206 (permitting receiver to avoid certain transfers of or liens on property of, or obligations incurred by, insurer), .207 (establishing liability of transferee for avoided transfer); Tex. Bus. & Com. Code ch. 24 (Uniform Fraudulent Transfer Act).

4

The ABC Respondents, the Embark Respondents, the ACP Respondents, and the Surviving Access Holdco Entities filed special appearances objecting to the district court's exercise of jurisdiction over them. *See* Tex. R. Civ. P. 120a. After a hearing, the trial court denied the special appearance as to each of the ABC Respondents, the Embark Respondents, the ACP Respondents, and the Surviving Access Holdo Entities. This appeal followed.

## DISCUSSION

Texas courts may exercise jurisdiction over a non-resident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional guarantees of due process. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *see* Tex. Civ. Prac. & Rem. Code § 17.042 (Texas long-arm statute). The Texas long-arm statute allows Texas courts to exercise personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (quoting *U-Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)). Consequently, "the requirements of the Texas long-arm statute are satisfied if an assertion of jurisdiction accords with federal due-process limitations." *Moki Mac River Expeditions*, 221 S.W.3d at 575.

The exercise of jurisdiction over a non-resident comports with due process when (1) the non-resident has minimum contacts with the forum state, and (2) asserting jurisdiction complies with traditional notions of fair play and substantial justice. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *see International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "A defendant establishes minimum contacts with a state when it purposefully avails itself of the privilege of conducting activities within the forum state, thus

5

invoking the benefits and protections of its laws." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009). If a non-resident's Texas contacts are random, fortuitous, or attenuated, the defendant is not subject to jurisdiction in Texas courts. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 778 (Tex. 2005). In addition, a defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction of Texas. *Id.* The defendant's activities, whether they consist of direct acts within Texas or conduct outside of Texas, "must justify a conclusion that the defendant could reasonably expect being called into a Texas court." *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A non-resident's contacts can give rise to either specific or general jurisdiction. *BMC Software*, 83 S.W.3d at 795. Specific jurisdiction is established if the defendant's alleged liability arises out of or relates to the defendant's contacts with the forum. *Moki Mac River Expeditions*, 221 S.W.3d at 575 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S.408, 414 (1984)). When specific jurisdiction is alleged, our minimum-contacts analysis must focus on the relationship among the defendant, the forum, and the litigation. *Id.* at 575-76. For a non-resident's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Id.* at 585.

Whether a court has jurisdiction is a question of law that we review de novo. *Moncrief Oil*, 414 S.W.3d at 150. The plaintiff bears "the initial burden of pleading allegations sufficient to confer jurisdiction," and the burden then shifts to the defendant "to negate all potential bases for personal jurisdiction the plaintiff pled." *Id.* at 149. A defendant can negate jurisdiction either legally or factually. *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). Legally, the defendant can show that the plaintiff's alleged jurisdictional facts,

6

even if true, do not meet the personal jurisdiction requirement. *Id.* Factually, the defendant can present evidence that negates one or more of the requirements, controverting the plaintiff's contrary allegations. *Id.* The plaintiff can then respond with evidence supporting the allegations. *Id.* If the parties present conflicting evidence that raises a fact issue, we will resolve the dispute by upholding the trial court's determination. *See Retamco Operating*, 278 S.W.3d at 337; *see also BMC Software*, 83 S.W.3d at 795. "When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by the evidence." *Moncrief Oil*, 414 S.W.3d at 150. If the appellate record includes the reporter's record and clerk's record, as it does in this case, the trial court's implied findings are not conclusive but may be reviewed for legal and factual sufficiency of the evidence. *BMC Software*, 83 S.W.3d at 795. On appeal, the scope of the record includes all of the evidence in the record. *Washington DC Party Shuffle, LLC v. IGuide Tours, LLC*, 406 S.W.3d 723, 729 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). With these principles in mind, we consider the allegations and evidence presented to the trial court to determine whether the trial court erred by denying the special appearances.

The SDR generally alleged that the trial court had jurisdiction over all eighteen appellants as follows:

> This Court has jurisdiction over the parties herein pursuant to Tex. Ins. Code §443.005. Specifically, this court has personal jurisdiction over Defendants for the following reasons: this is a civil proceeding arising under and related to this delinquency proceeding under Chapter 443 of the Texas Insurance Code; the transactions and occurrences which form the basis for this Petition occurred, in whole or in part, in this state; defendants reside/and or conduct business in this state that is directly related to the subject matter of this suit; defendants fall under the Court's statutory personal jurisdiction set out in Tex. Ins. Code §443.005(d) and Tex. Civ. Prac. & Rem. Code Chapter 17, and Defendants, individually and/or

collectively, and/or their predecessors contracted with a Texas resident and performance of the agreement in whole or in part, was to occur in Texas.

We consider each of the five bases the SDR relied on to establish personal jurisdiction over the appellants.

First, the SDR asserted that the court had jurisdiction over the appellants because the proceeding was "related to" a delinquency proceeding under Chapter 443 of the Texas Insurance Code and because they collectively "fall under the Court's statutory personal jurisdiction set out in" section 443.005(d) of the Texas Insurance Code. The fact that the SDR's lawsuit was "related" to a delinquent insurer that was in receivership does not, however, eliminate the requirement that the exercise of jurisdiction over the defendants to the underlying proceeding also comport with state and federal due process requirements. *See Guardian Royal Exch. Assur. Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991); *Walker v. Loiseau*, No. 03-02-00328-CV, 2003 WL 21705253, at *5 (Tex. App.—Austin Jul. 24, 2003, no pet.) (mem. op.) (analyzing whether non-resident defendant had minimum contacts necessary for Texas to assert personal jurisdiction over it in receivership suit). Section 443.005(d) of the Texas Insurance Code provides that a receivership court has jurisdiction over five categories of entities, including agents who have written policies for the insurer; entities that have entered into contracts with the insured; officers and directors, and managers of the insurer; entities that hold assets of the insurer; and entities or persons obligated to the insurer in an action incident to the obligation. *See* Tex. Ins. Code § 443.005(d). As an initial matter, the underlying proceeding is not a delinquency proceeding commenced under chapter 443 of the Texas Insurance Code. The delinquency proceeding is a separate action that was filed in Travis County district court before the SDR filed the underlying suit. Thus, it is not clear that section 443.005(d) has any relevance

8

to the court's jurisdiction over the non-resident appellants. In any event, the live pleadings do not include allegations that tie any of the individual appellants to any of the bases for jurisdiction enumerated in section 443.005(d). The petition makes global allegations against groups of defendants, and we are unable to discern from those allegations which defendants the SDR maintains fall within any of the categories listed in section 443.005(d). Thus, the SDR failed to allege jurisdictional facts that establish that chapter 443 of the Texas Insurance Code provides a basis for the trial court to exercise personal jurisdiction over appellants that comports with state and federal due process requirements. *See Guardian Royal Exch.*, 815 S.W.2d at 226.

Next, the SDR alleged that "transactions and occurrences which form the basis for" the underlying suit occurred in whole or in part in Texas. The SDR's petition, however, does not identify any "transaction" or "occurrence" involving any appellant that occurred in whole or in part in Texas. Similarly, the SDR's assertion that "defendants reside and/or conduct business" in Texas directly related to the subject of the underlying suit is unsupported by any allegations of jurisdictional facts that identify what business any particular appellant conducted in Texas or how any such business relates to the claims asserted in the suit. And it is undisputed that none of the appellants are Texas residents.

We next consider the SDR's allegation that the appellants "individually or collectively and/or their predecessors" contracted with a Texas resident and performance of the contract occurred in whole or in part in Texas. *See* Tex. Civ. Prac. Rem. Code § 17.042 (acts constituting business in Texas include contracting with Texas resident when either party is to perform contract in whole or in part in Texas). The SDR first alleges that the appellants "acted in concert with each other," which, in its view, justifies its failure to make individual jurisdictional allegations against each of them. Instead, the SDR appears to maintain that the

9

acts it describes as subjecting certain appellants to personal jurisdiction in Texas should be ascribed to all the appellants. Assuming, without deciding, the validity of this theory, we consider whether the SDR's jurisdictional allegations establish that any of the appellants are subject to personal jurisdiction in Texas. In its brief, the SDR asserts that appellants are "either entities that contracted with a Texas insurance company or successors to such entities." The SDR argues that the ABC Respondents are "successors" to Access Holdco Management and its subsidiaries and, consequently, were "successors in contracts" with Texas residents. The SDR bases this argument on the transfer of assets that occurred as part of the assignment for the benefit of creditors proceeding in Delaware Chancery Court. In that series of transactions, the ABC Respondents acquired the assets previously held by Access Holdco Management and its subsidiaries by assignment, not by a stock transfer. Thus, the ABC Respondents are not "successors" to any of the liabilities or obligations of Access Holdco Management or its subsidiaries. *See McKee v. American Transfer & Storage*, 946 F. Supp. 485, 487 (N.D. Tex. 1996) ("Texas law does not generally recognize successor liability for subsequent purchases of corporate assets."). Thus, the ABC Respondents' acquisition of assets owned by Access Holdco Management and its subsidiaries does not establish that they should have reasonably foreseen being haled into Texas courts in connection with any business conducted between Access Holdco Management and its subsidiaries and Access. There is no evidence that the ABC Respondents assumed, and therefore had any responsibility for, any liabilities of Access Holdco Management or its subsidiaries. *Cf. Kelly Inv., Inc. v. Basic Cap. Mgmt.*, 85 S.W.3d 371, 375-76 (Tex. App.—Dallas 2002, no pet.). In *Kelly*, the court held that the non-resident defendant was subject to personal jurisdiction in Texas because it purchased contracts with Texas residents knowing that, at the time of the purchase, those contracts were the subject of pending litigation in

10

Texas and expressly assumed the "litigation risk" of the Texas cases. *Id.* Here, however, the ABC Respondents did not assume any existing obligations or liabilities related to the assets it acquired by assignment. Moreover, the SDR presented no evidence of what specific contracts it was relying on to confer personal jurisdiction over the ABC Respondents other than to allege that they were with "Texas residents." Furthermore, other than to assert that all the appellants "acted in concert with each other," the SDR does not explain the basis for its contention that any of the Embark Respondents, the ACP Respondents, or the Surviving Access Holdco Entities are successors of entities that contracted with Access, nor does it identify any specific contracts that any of those appellants had with a Texas company that are the basis of any of the claims asserted in the underlying proceeding.

On appeal the SDR also argues that all appellants agreed to submit to personal jurisdiction in Texas because they or their predecessors were parties to an agreement with the SDR that included a provision that the Texas court in which the receivership action was pending would have exclusive jurisdiction over any litigation arising out of the agreement. The SDR argues that this agreement constitutes consent by the appellants to personal jurisdiction in Texas. The agreement the SDR refers to is a transition services agreement (the SDR TSA) that the SDR entered into with Access Holdco Management and its subsidiaries in April 2018, shortly after the Texas receivership proceedings were instituted. The stated purpose of the SDR TSA was for Access Holdco Management and its subsidiaries to "provide services to the SDR in order to facilitate the orderly liquidation of [Access]." The SDR argues that the appellants assumed the SDR TSA from Access Holdco Management and, consequently, have consented to personal jurisdiction in Texas for litigation arising out of that agreement. The SDR maintains that the SDR TSA was one of the "assets" Access Holdco Management assigned to the ABC Respondents

11

that were then sold to the Embark Respondents. At the hearing on the special appearances, the SDR's representative testified that she understood that the SDR TSA was assigned to Embark Holdco as part of an August 2018 asset purchase agreement pursuant to which Embark Holdco Management, LLC and Embark Corporate Services, LLC acquired certain of the assets that had been assigned to the ABC Respondents. The SDR representative stated, however, that she was not familiar with the specific assets that were sold or assigned in the August 2018 asset purchase agreement and that her understanding was based on her review of the transaction documents. She did not identify anything specific in those documents to support her understanding that either of the Embark Respondents had been assigned or assumed the SDR TSA.

For their part, the Embark Respondents submitted the sworn declaration of Thomas A. Minick, president of each of the ABC Respondents. Minick averred that none of the ABC Respondents had entered into any contract with the SDR or assumed or taken assignment of any contracts between the SDR and Access Holdco Management. Minick further averred that the only contract the ABC Respondents had assumed from Access Holdco Management and subsequently assigned to the Embark Respondents was a different transition services agreement, the ABC TSA that ACS (Assignment for the Benefit of Creditors), LLC had entered into with Access Corporate Services, LLC in order to facilitate ACS (Assignment for the Benefit of Creditors), LLC's sale and transfer of the assets that Access Holdco Management had assigned to the ABC Respondents. The Embark Respondents submitted the sworn declaration of Raimundo Ramirez, the president of Embark Holdco. Ruiz averred that none of the Embark Respondents had entered into any contracts with the SDR and that none assumed any contract from Access Holdco Management other than the ABC TSA. The ABC Respondents and the Embark Respondents also attached as an exhibit to the sworn declaration of Matthew L. McGinnis

12

a copy of the asset purchase agreement between the ABC Respondents and the Embark Respondents, which specifies on Schedule 1.1(c) that the only contract assumed by the Embark Respondents as part of the transaction was the ABC TSA, which is not the same agreement as the SDR TSA. Thus, appellants established that none were parties to the SDR TSA or its agreement to the jurisdiction of the Texas receivership court for litigation arising out of the SDR TSA. Nor does the SDR explain how the claims it is asserting in this suit arise out of the SDR TSA and, if they do, why they are properly brought in this proceeding as opposed to in the separate receivership proceeding.

The SDR also alleges that the appellants participated in "a scheme to defraud the SDR and other Access creditors" by instituting the proceedings in Delaware Chancery Court that resulted in the assignment of assets to the ABC Respondents and the sale of certain assets to the Embark Respondents. The SDR asserts that these transactions constitute a tort committed in whole or in part in Texas such that the appellants are subject to the district court's jurisdiction. The asset transfer was done pursuant to Delaware law and under the supervision of the Delaware Chancery Court. Even if the asset transfer could be considered a tort,[2] it was not "committed in whole or in part" in Texas. *See* Tex. Civ. Prac. & Rem. Code § 17.042(2). The SDR did not make any allegations or present evidence that showed a factual nexus between the alleged wrongdoing and Texas such that the alleged wrongdoing could be said to have been committed in whole or in part in Texas. *See Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 67-68 (Tex. 2016)

---

[2] The SDR has not presented evidence that the proceeding was improper or constituted tortious conduct. In fact, the SDR has filed a proof of claim in the Delaware Chancery Court by which it may recover from the estates of Access Holdco Management and its subsidiaries any money or property to which it can show itself entitled. The SDR has not identified any evidence of harm Access or the receivership estate suffered as a result of the assignment of Access Holdco Management and its subsidiaries' assets to the ABC Respondents.

("Thus, 'the mere fact that a defendant's conduct affected plaintiffs with connections to the forum state does not suffice to authorize jurisdiction.'" (quoting *Walden v. Fiore*, 571 U.S. 277, 291 (2104))).

The SDR further asserts that appellants are subject to personal jurisdiction because, according to the SDR, "the entirety of [their] economic value derives from the contracts with [a] Texas insurance company." Relying on *Cornerstone Healthcare Group Holding, Inc. v. Nautic Managment VI, L.P.*, 493 S.W.3d 65 (Tex. 2016), the SDR argues that because the ACP Respondents purchased Access Holdco Management, the parent company of the various entities that contracted with Access to conduct its business before it was placed into receivership, they are subject to the district court's personal jurisdiction. The SDR's reliance on *Cornerstone* is misplaced. In *Cornerstone*, a Texas company claimed that non-resident private equity funds had usurped a corporate opportunity by purchasing a chain of Texas hospitals from a Texas company. *Id.* at 67-68. The court held that Texas courts had specific personal jurisdiction over the non-resident funds because they had formed a Texas-based limited liability company for the purpose of purchasing the hospitals. *Id.* at 67. In the present case, the ACP Respondents did not form a Texas company, did not purchase a Texas company, and did not purchase assets from a Texas company. Rather, the ACP Entities acquired a non-resident company, Access Holdco Management, from another non-resident company, Access Insurance Holdings, LLC, in a transaction governed by Delaware law. Although the company acquired, Access Holdco Management, had been a service provider to a Texas entity, that non-party's provision of services to a Texas entity in the ordinary course of its business prior to its acquisition is too attenuated and fortuitous to constitute purposeful availment of the forum by the ACP Respondents. *See BMC Software*, 83 S.W.3d at 795. Moreover, the SDR's jurisdictional

14

allegations do not establish that its claims relate to the ACP Respondents' purchase of Access Holdco Management such that the purchase can give rise to specific jurisdiction over the ACP Respondents in a Texas court. *See Ajamie LLP v. Podesta Grp., Inc.*, No. 01-19-00503-CV, 2020 WL 716734, at \*4 (Tex. App.—Houston [1st Dist.] Feb 13, 2020, no pet.) (mem. op.) (noting that relatedness prong of specific jurisdiction requires that there be "substantial connection" between defendant's forum contacts and operative facts of litigation).

Finally, the SDR argues on appeal that the Surviving Holdco Entities have sufficient minimum contacts with Texas to be subject to the jurisdiction of its courts because each had managing general agency contracts with Access. The Surviving Holdco Entities were two subsidiaries of Access Holdco Management that performed general services for Access and other insurers in Arizona and in Pennsylvania. In its petition the SDR does not allege any jurisdictional facts related to these two entities. Although the Surviving Holdco Entities did provide certain services to Access, those services were performed in Pennsylvania and Arizona, not in Texas. Furthermore, the SDR's allegations do not establish that those services are the basis for the SDR's claims in the underlying proceeding. Thus, the SDR has failed to plead facts that demonstrate that the Surviving Holdco Entities are subject to the district court's personal jurisdiction. *See id.* at \*6 (holding that non-resident lobbying group's services for Texas law firm that were performed in Washington, D.C. were "insufficiently related to the operative facts of [the] claim" to confer personal jurisdiction in Texas).

We conclude that the SDR has failed to allege sufficient jurisdictional facts to demonstrate that the appellants had contacts with Texas sufficient to support the exercise of personal jurisdiction over them. Our review of the record also fails to reveal contacts between the appellants and Texas sufficient to support personal jurisdiction. Having determined that the

15

appellants did not have sufficient minimum contacts with Texas to support personal jurisdiction, we need not address whether the exercise of that jurisdiction would comport with notions of fair play and substantial justice. *See Brady v. Kane*, No. 05-18-01105-CV, 2020 WL 2029245, at *14 (Tex. App.—Dallas Apr. 28, 2020, no pet.) (mem. op.).

## CONCLUSION

Because the SDR's allegations in its petition are not sufficient to confer jurisdiction and because, based on the record before us, the ACP Respondents', the Embark Respondents', the ABC Respondents', and the Surviving Holdco Entities' contacts with Texas are insufficient to establish specific jurisdiction, the trial court erred in denying their special appearances. Consequently, we reverse the trial court's order denying the ACP Respondents', the Embark Respondents', the ABC Respondents', and the Surviving Holdco Entities' special appearances and render judgment dismissing all claims against them for want of jurisdiction.

_____

Chari L. Kelly, Justice

Before Justices Goodwin, Kelly, and Smith

Reversed and Rendered

Filed: June 4, 2021

16